# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER ALAN GAUTHIER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No. 2:17-cv-00790-KJN<br><br><br>ORDER |

Plaintiff Roger Alan Gauthier seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (See ECF Nos. 14, 14-1.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 15.) Thereafter, plaintiff filed a reply brief. (ECF No. 16.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I.  BACKGROUND

Plaintiff was born on February 4, 1962, has completed the eleventh grade, and has obtained a GED.[2]  (Administrative Transcript ("AT") 31-32.)  On May 30, 2013, plaintiff applied for DIB, with an alleged onset date of January 16, 2013.  (AT 10, 186.)  Plaintiff claimed that he was disabled due to insulin dependent diabetes, high blood pressure, congestive heart failure, chronic fatigue, sleeping a lot, and chest pains.  (AT 206.)  After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on July 7, 2015.  (AT 24-59.)  The ALJ subsequently issued a decision dated September 16, 2015, determining that plaintiff had not been under a disability as defined in the Act, from January 16, 2013, through the date of the decision.  (AT 10-19.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 7, 2017.  (AT 1-3.)  Plaintiff subsequently filed this action on April 14, 2017, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly weighed the medical opinion evidence; (2) whether the ALJ improperly discounted plaintiff's credibility; (3) whether the ALJ's residual functional capacity ("RFC") determination was without substantial evidence support; and (4) whether the ALJ erred at step five.

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV. DISCUSSION

   A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] Preliminarily, the ALJ determined that plaintiff met the insured

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

3

status requirements of the Act through March 31, 2018. (AT 12.) At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since January 16, 2013, the alleged onset date. (Id.) At step two, the ALJ found that plaintiff has the following severe impairments: obesity, congestive heart failure, coronary artery disease, chronic obstructive pulmonary disorder, and obstructive sleep apnea. (Id.) However, at step three the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 14.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff "has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b)." (AT 14.) At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. (AT 17.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (AT 18.) Thus, the ALJ concluded that plaintiff had not been under a disability as defined in Act from January 16, 2013, through September 16, 2015. (AT 19.)

  B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

    1. *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking,

---

  Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

  Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, plaintiff argues that the ALJ improperly weighed the medical opinions relating to plaintiff's physical limitations. (See ECF No. 14-1 at 14-17.) For the reasons that follow, plaintiff's arguments are unavailing.

          i.      **Opinion of Michael Kinnison, M.D.**

On October 20, 2013, Michael Kinnison, M.D. performed a consultative examination of plaintiff. (AT 398-402.) Based on his physical examination, Dr. Kinnison opined that plaintiff

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

could lift and carry fifty pounds occasionally and twenty-five pounds frequently; could stand and walk for six hours in an eight-hour work day; had an unlimited capacity for sitting; and could frequently climb. (AT 401-02.) Dr. Kinnison essentially opined that plaintiff is capable of medium work. See 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds").

The ALJ concluded that "Dr. Kinnison's opinion is persuasive because it is based upon a physical examination." (AT 15.) The ALJ did not fully adopt this opinion, however, as he determined that plaintiff is capable of light work, not medium work. (See AT 14.) The ALJ "emphasized that the restrictions indicated by Dr. Kinnison are not inconsistent with those determined . . . [by the ALJ because] the ability to perform at greater exertion implies the ability to perform at lesser exertional level." (AT 15.) Accordingly, the ALJ gave Dr. Kinnison's opinion significant weight. (Id.)

The ALJ's conclusion is supported by the record because Dr. Kinnison's physical examination of plaintiff revealed that plaintiff ambulated normally; could sit comfortably; could get off and on the examination table without difficulty; and could go from sitting to supine to sitting in a normal fashion. (AT 399.) Additionally, Dr. Kinnison's other objective findings—including cardiovascular, range of motion, and coordination, station, and gait—were largely normal. (See AT 400-01.) Plaintiff's seated and supine straight leg raising tests were also negative. (AT 401.) Moreover, even though plaintiff appeared to give poor effort, he also demonstrated muscle strength of 4/5 on all motor strength tests. (Id.) Dr. Kinnison further observed that plaintiff was able to do a deep knee bend, and his muscle bulk and tone was normal with no atrophy. (Id.)

Plaintiff argues that the ALJ erroneously relied on Dr. Kinnison's opinion because Dr. Kinnison only reviewed a single office visit from plaintiff's medical records and not any of his laboratory tests. (ECF No. 14-1 at 15.) It is true that Dr. Kinnison only reviewed a single office visit from July 2013. (AT 398.) However, as explained, the ALJ did not adopt all of Dr. Kinnison's findings in the RFC. Rather, the ALJ found his opinion to be persuasive because it was based upon a physical examination of plaintiff—a reasonable conclusion supported by the

record.  Thus, the opinion was one piece of evidence, among many, upon which the ALJ relied when determining plaintiff's RFC.

Even assuming that the ALJ erroneously relied on Dr. Kinnison's opinion, any error was harmless because, as explained below, the ALJ determined plaintiff's RFC based on his review of the record as a whole, which included other opinion evidence that the ALJ alternatively relied upon or discounted for other supported reasons.  See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

### ii. Opinions of C. Eskander, M.D. and C. David, M.D.

On November 1, 2013, State agency reviewing physician C. Eskander, M.D. reviewed plaintiff's medical records and opined that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, could sit, stand, and walk for six hours in an eight-hour work day and must avoid concentrated exposure to fumes, odors, dusts, gases, and/or poor ventilation.  (AT 69-70.)  On March 4, 2014, State agency reviewing physician C. David, M.D. reviewed the record and endorsed Dr. Eskander's opinion that plaintiff is "able to perform light work activity."  (AT 93.)  The ALJ gave these opinions great weight, determining that these opinions were "consistent with the medical records as a whole."  (AT 15.)

This conclusion is supported by substantial evidence in the record.  When discussing the record as a whole, the ALJ accurately pointed out representative examples that supported his conclusion.  As to plaintiff's respiratory impairment, the ALJ recounted that "pulmonary function studies revealed that the claimant's obstructive airway deficit improved significantly with medication" and that "[c]hest x-rays also revealed stable results."  (AT 17; see AT 389, 451.)  Other treatment notes in the record also revealed normal respiratory findings and support the ALJ's conclusion.  (See AT 297, 327, 400, 410, 412, 437, 465, 467.)

As to plaintiff's cardiac impairment, the ALJ noted that:

> EKG revealed normal sinus rhythm, good R wave progression across the precordium and no acute ischemic ST or T-wave changes [AT 482].  Cardiac ultrasound studies showed normal left ventricle size and function with an ejection fracture of 60-65% and mild dystolic dysfunction [AT 487].  A nuclear stress test revealed a hyperdynamic

> left ventricle with an ejection fraction of 75% and a small are[a] of mild reversible ischemia [AT 487].

(AT 17; see AT 482, 487.) The ALJ also observed that Dr. Anita Blosser found that plaintiff's gait, reflexes, and sensory examinations were within normal limits. (See AT 16; 384.) Further, Dr. Kinnison's objective examination revealed consistent findings. (See AT 399-01.)

### iii. Opinions of Anita Blosser, M.D. and Jon Malan, D.O.

On May 13, 2013, plaintiff's treating physician Anita Blosser, M.D. filled out a mostly check-box medical assessment form and opined that in an eight-hour day plaintiff could stand and/or walk for less than two hours; could sit for about four hours; required more than ten unscheduled rest periods of up to two hours; must elevate his legs for fifty percent of the day, could rarely lift and/or carry ten or twenty pounds; could rarely twist or stoop; and would be absent about once or twice a month. (AT 353-56.)

Thereafter, Dr. Blosser filled out a mostly check-box RFC questionnaire on January 10, 2014, opining that plaintiff required one or two rest breaks every two hours; could occasionally lift and/or carry ten pounds; could rarely lift and/or carry twenty pounds; could never twist, stoop, bend, crouch, or climb ladders; and would be absent more than four days a month. (AT 415-18.) Then, on January 24, 2018, Dr. Blosser filled out another mostly check-box medical assessment form indicating that plaintiff could not sit for more than two hours in a day. (AT 421.)

On May 14, 2015, plaintiff's subsequent treating physician Jon Malan, D.O. filled out a check-box medical statement with minimal comments, and a mostly check-box RFC questionnaire. (AT 500-01; 503-06.) Dr. Malan opined that plaintiff could only work one hour a day; could only sit for half an hour and stand for one hour at a time; and could occasionally lift and/or carry ten pounds. (AT 501.) Dr. Malan further opined that in an eight-hour work day, plaintiff could stand/walk less than two hours; could sit about four hours; required one or two unscheduled breaks; would be absent more than four days per month; and could never twist, stoop, crouch, or climb. (AT 505-06.)

The ALJ considered these opinions in light of the whole record and concluded that

////

> the opinions of Drs. Blosser and Malan are not supported by the medical evidence, which revealed generally benign results. For example, Dr. Blosser found that the claimant's gait, reflexes and sensory examinations were within normal limits [AT 384]. Additionally, Dr. Malan's [opinion] is contrary [to] the objective evidence. Primarily, Dr. Malan stated that the claimant's limitations were due to abnormal pulmonary function studies. However, the pulmonary function study revealed merely moderate airway obstruction that improved significantly with albuterol inhalation [AT 389]. Moreover, Drs. Blosser and Malan appeared to rel[y] quite heavily on the claimant's subjective complaints. Thus, their opinions are given little weight.

(AT 16.) The ALJ's conclusion is supported by substantial evidence in the record. (See, e.g., AT 384, 389.) As explained above, the record includes stable chest x-rays (AT 451) and numerous normal respiratory findings. (See AT 297, 327, 400, 410, 412, 437, 465, 467.) In addition, Dr. Kinnison's objective examination findings were largely normal. (See AT 399-01.)

Therefore, the ALJ appropriately gave the opinions of Drs. Blosser and Malan little weight because they were conclusory, supported by minimal clinical findings, and based largely upon plaintiff's subjective complaints. See Meanel, 172 F.3d at 1114.

### iv. **Evidence not discussed**

Plaintiff argues that the ALJ fundamentally erred while weighing the opinion evidence because he disregarded a number of objective examinations without explanation—specifically, a January 29, 2013 chest x-ray (AT 344); a January 30, 2013 CT angio chest scan (AT 315); a July 9, 2014 EKG examination (AT 432-34, 481-83); a July 30, 2014 intravenous perfusion study (AT 494-96); an August 8, 2014 bilateral venous ultrasound of plaintiff's lower extremities (AT 486); and a February 24, 2015 polysomnogram (AT 439-41). (See ECF No 14-1 at 15-16.) Plaintiff's argument is unavailing.

First, when "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." Id. Thus, the ALJ was not required to discuss each of these tests.

At the same time, plaintiff has not accurately characterized the ALJ's decision. The ALJ did discuss the July 9, 2014 EKG and the August 8, 2014 cardiac ultrasound. (See AT 17.)

Moreover, the ALJ's conclusions regarding the opinion evidence are supported by substantial evidence in the record.

Second, plaintiff's own arguments demonstrate that his interpretation of the record is not the only reasonable one. For example, while the plaintiff points out that the January 30, 2013 CT scan revealed "severe COPD" (see ECF No. 14-1 at 15; AT 315), plaintiff also concedes that other evidence in the record revealed that plaintiff's condition improved significantly with the use of albuterol inhalation (see ECF No. 14-1 at 15; AT 388-95). The ALJ incorporated both of these findings in his conclusion when he determined that plaintiff has a severe impairment of COPD, while acknowledging that this condition was improved with medication. (See AT 12, 16.).

Similarly, while plaintiff stresses that the July 30, 2014 intravenous perfusion study revealed a high intermediate probability of a hemodynamically significant coronary artery stenosis (see ECF No. 14-1 at 16; AT 494), plaintiff also acknowledges that a nuclear stress test revealed that plaintiff has a small area of reversible ischemia (see ECF No. 14-1 at 16; AT 486). The ALJ again incorporated both of these findings when he concluded that plaintiff has the severe impairments of congestive heart failure and coronary artery disease, but that these impairments did not preclude plaintiff from light work as defined by 20 C.F.R. 404.1567(b). (See AT 12, 14-17.)

Moreover, while plaintiff asserts that the July 9, 2014 EKG revealed troubling findings suggesting disability, he fails to acknowledge that the test also revealed "normal sinus rhythm at 68 bpm with a normal axis, a normal PR interval at 198 ms, good R wave progression across the precordium and no acute ischemic ST or T-wave changes" (AT 433; 482)—findings that the ALJ explicitly discussed and relied upon in his decision. (See AT 17.)

Finally, plaintiff asserts that the ALJ erred in relying on the opinions of Drs. Kinnison, Eskander, and David "because the results of the sleep apnea study, venous ultrasound of his lower extremities, and Myocardial Perfusion Scan were not available to" them. (See ECF No 14-1 at 17.) However, the medical record is voluminous, and the ALJ had sufficient information on which to base his RFC determination. See Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into

a succinct RFC."). While the medical evidence was subject to rational interpretation by the ALJ, it was not so ambiguous as to trigger a duty to develop the record further. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The court finds no error on this basis.

Therefore, when weighing the opinion evidence, the ALJ sufficiently considered and discussed the objective evidence in the record, and reached a conclusion supported by substantial evidence. Importantly, the ALJ provided several specific and legitimate reasons for discounting the opinions of Drs. Blosser and Malan.

2. *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of fatigue, pain, shortness of breath, weakness, dizziness, upper extremity atrophy, excessive sleepiness, etc. (See AT 16.) Indeed, the ALJ limited plaintiff to light work. (AT 14.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

### i. Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, the ALJ reasonably pointed out that the objective medical evidence does not support the severity of plaintiff's alleged impairments. (See AT 17.) As to plaintiff's respiratory impairment, the ALJ pointed out that plaintiff's "obstructive airway deficit improved significantly with medication"; that plaintiff had stable chest x-rays; and that "physical examination revealed no wheezing in the lungs and no cyanosis in the lower extremities." (AT 17; 389, 432, 451.) As to plaintiff's cardiac impairment, the ALJ noted the normal findings in the July 9, 2014 EKG and the August 8, 2014 cardiac ultrasound, as well as the reversible ischemia found in the nuclear stress test on September 5, 2014. (See AT 17, 432-34, 481-83, 487.)

////

////

### ii. Failure to follow treatment

Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

Here, the ALJ noted that the medical records show that plaintiff "continued to smoke five to eight cigarettes a day" (AT 17, 481) even though plaintiff's treating physicians continually counseled him to stop smoking (see AT 360, 362, 384, 405, 408, 410, 437, 457, 462, 469, 477). Indeed, Dr. Malan even wrote in plaintiff's chart on March 19, 2015, "quit smoking please." (AT 457.) But, plaintiff admitted at the July 7, 2015 hearing that he was back to smoking a half of a pack of cigarettes a day. (AT 40.)

### iii. Conservative treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

In this matter, the ALJ concluded that "[a]lthough the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. For example, the claimant's treatment has consisted primarily of medication management. Such evidence suggests that the claimant is not as functionally limited as alleged." (AT 17.) This conclusion is supported by the record that demonstrates that plaintiff's treatment with Drs. Blosser and Malan consisted mostly of prescription refills. (See, e.g., AT 360, 362-68, 405, 408, 410, 412, 455, 457, 459, 461, 463, 465, 467, 469, 471, 473, 475, 477.)

13

####  iv.  Condition can be controlled with medication

A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).

The ALJ reasonably discounted plaintiff's complaints of disabling respiratory functioning in part because plaintiff's condition is controlled with an inhaler. (See AT 17, 389.)

####  v.  Third party testimony

"[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and citation omitted). Here, the ALJ summarized the third-party statement, clearly indicating that he considered the information. (See AT 16.) Moreover, plaintiff's friend's statement essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally germane to the third-party testimony. As such, any error in not explicitly re-stating, or incorporating by reference, all of the reasons given for discounting plaintiff's testimony with respect to this third party was harmless and remand is not warranted. See Molina, 674 F.3d at 1115-22.

3. *Whether the ALJ's RFC determination was without substantial evidentiary support*

For the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. As such, plaintiff's argument that the RFC is without substantial evidentiary support is not well taken.

4. *Whether the ALJ erred at step five*

At step five, the ALJ has the burden of demonstrating that in light of plaintiff's RFC, "he can engage in other substantial gainful work that exists in the national economy." Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "There are two ways for the Commissioner to meet his Step Five burden: (1) the testimony of a VE ["vocational expert"]; or (2) by reference to the

Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Id. (citing Tackett, 180 F.3d at 1100-01.)

Plaintiff asserts that the ALJ erred at step five when he relied on the VE's testimony regarding three specific jobs plaintiff could allegedly perform because the VE failed to account for the fact that each job "[m]ay involve significant standing, walking, pushing/and or pulling" according to the Dictionary of Occupational Titles. (ECF No. 14-1 at 22.) Even assuming that the ALJ so erred, any such error is harmless. See Molina, 674 F.3d at 1115-22.

The ALJ primarily relied on the Medical-Vocational Guidelines when he determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (See AT 18 ("Based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.14").) The ALJ only relied on the VE's testimony as an alternative basis for finding plaintiff not disabled. (See id.) Therefore, the ALJ met his burden at step five. See Osenbrock, 240 F.3d at 1162.

V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: September 26, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE